IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NINNIS EUGENE EASLEY and ) | |
| ANITA EASLEY, ) | Case No. 04-20221 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ANITA EASLEY, ) | Adversary No. 04-2017 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EDUCATIONAL CREDIT MANAGEMENT ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Anita Easley ("Debtor") filed a complaint seeking a determination that her student loan debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon her an undue hardship, which allegations the defendant Educational Credit Management Corporation ("Defendant") denied. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is dischargeable pursuant to § 523(a)(8).

### I. FACTUAL BACKGROUND

Debtor incurred student loans to finance her education while attending Lincoln

University nursing school and the College of Health Careers. Debtor did not receive a degree from Lincoln University but obtained a degree in EKG Technology in 1991 from the College of Health Careers. The loan at issue was issued to Debtor to attend the College of Health Careers. The original lender on Debtor's student loan was Sallie Mae and the guarantor was the Illinois Student Assistance Commission which assigned the loan at issue to Defendant.[1] Debtor married Ninnis Easley in 1992. They have three children. Debtor had several jobs from 1994-1997, including working at a factory and a hospital. In 2000, Debtor obtained a job at the Mid-Missouri Psychiatric Hospital as a nurse's aid. A patient attacked her while she was employed there and her back was injured. The Worker's Compensation Board determined that she had a 5% permanent partial disability and her doctor recommended a permanent 20 pound lifting restriction.[2] In 2002, she was employed as a nursing technician at the University of Missouri Hospital but was terminated from that job due to another back injury and her lifting restriction.[3] Debtor has applied for other jobs but has been unsuccessful in obtaining employment. Debtor testified that she can only work a morning shift because she has to be at home when her children are there as her husband is not able to care for them alone. She currently works part-time at a restaurant owned by her brother.

Debtor's husband was employed by Kraft Foods in Columbia, Missouri. In 2002, he began having seizures which caused him to be unable to perform his job. Mr. Easley qualified for disability insurance through his employer and has now qualified for social security benefits.

---

[1] Defendant's Exs. 1, 2 & 4,

[2] Plaintiff's Ex. 12.

[3] Plaintiff's Exs. 3, 13.

Debtor filed a Chapter 7 bankruptcy petition on February 4, 2004, and filed this adversary proceeding seeking discharge of her student loans due to hardship on May 14, 2004.

## II. DISCUSSION

### A. Undue Hardship

Debtor contends that it would be an undue hardship for her to repay the remaining amount due. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001). Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts. In this Circuit, the applicable standard is the "totality of the circumstances" test. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704. In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student

loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

B.  Analysis of the Totality of the Circumstances

1.  Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. The current monthly household income consists of $1,424.00 received by Debtor's husband from a disability insurance policy maintained by his former

employer[4] and approximately $384.00 in wages she earns as a waitress. The total monthly household income is $1,808.00. A food stamp benefit previously being received has been discontinued[5], as was an unemployment insurance benefit in the amount of $66.00 per week. At the suggestion of the disability insurance carrier, Debtor's husband applied for a social security benefit which has now been approved and pursuant to which he will receive $1,108.[6] That benefit, however, substitutes for a portion of the disability insurance payment, which will now continue but only as to the difference between the total amount previously paid by the disability insurance carrier and the amount of the social security payment. Debtor testified that the total monthly benefit received by Debtor's spouse will still be $1,424.00.

Debtor works only part time, but has tried to obtain other employment both in the field for which she was trained and outside of it. Debtor testified that few jobs are available for persons trained solely as EKG technicians for the reason that hospitals are now training their nurses to perform these tasks and are not employing people trained only in this area. Debtor testified that she also sought and briefly took jobs outside of the health care field, including some manufacturing positions. As discussed more fully below, Debtor is somewhat limited in her ability to retain full-time employment as a result of her husband's disability and her own 5% disability and attendant restrictions on lifting. While she has been able to find jobs she is able to perform despite her own disability rating, some limitations have been imposed on her as a result of her husband's condition and her inability to leave her three children alone with him for any

---

[4]Def.'s Ex. 8.

[5]Plaintiff's Ex. 10.

[6]Def.'s Ex. 9.

5

significant amount of time. Even while employed on a full-time basis in the health care field, as she was in the year 2002, her income was only approximately $16,000.00 per year.[7] On a monthly basis, even assuming no deductions from her income for taxes or for any other purpose, her monthly earnings based on such an annual salary would be $1,333.33. That amount, combined with the disability insurance and social security benefit, would provide a total household income of $2,757.00 per month.

2. Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtor's reasonable living expenses. The total of the monthly expenses listed on Schedule J submitted at the time of filing was $2,444.25.[8] In response to interrogatories submitted by Defendant, Debtor listed monthly household expenditures totaling $2,959.00.[9] Defendant has raised questions about some of the additions and increased amounts reflected in the interrogatory answers. The Court agrees that there has been no adequate explanation for certain of the increases from amounts shown on Schedule J. In particular, Debtor could offer no good reason why the household's expenses for food would have increased $200.00 per month. She also admitted that the additional $42.00 for cable expenses actually reflected expenses for two months because she sometimes misses a payment and pays two at once. Obviously, however, the household's average monthly expenditure for this item is still $42.00. Deducting these two categories of expenses totaling $242.00 from the amounts shown in the interrogatory answers yields monthly expenditures of $2,717.00. A similar result

---

[7]Plaintiff's Ex. 1.

[8]Def.'s Ex. 12.

[9]Def.'s Ex. 13.

would be achieved if the Court simply averaged the amount shown on Schedule J and the amounts shown in the interrogatory answers. That average is $2,701.63.

The balance on Debtor's consolidated student loans is approximately $24,000.00.[10] Specifically, the total amount owed as of July 5, 2004, was $23,389.56, with interest accruing thereafter at the rate of $4.00 per day. Paid over a ten-year period, even without interest, retiring this debt would require payments of $200.00 per month. Over 15 years, the monthly payment would be $133.33, once again without factoring in any accrued or accruing interest. A longer repayment period would take the Debtor, who was 46 years old at the time of trial, past ordinary retirement age.

Based on these figures, it is apparent that the household lacks sufficient income to repay the debt. Even assuming Debtor is able to obtain full-time employment in a capacity similar to the job she obtained in 2002, the household's monthly income is completely consumed by the reasonable and necessary monthly expenses. There appears to be no room leftover for making any payment on the student loan debt, let alone the amount that would be required to retire the indebtedness plus interest over any reasonable period of time.

### 3. Other Relevant Facts and Unique Circumstances

As to the third factor the Court must evaluate, the Debtor has presented evidence of unique facts or circumstances that the Court believes will cause an undue hardship for the Debtor to repay the student loan. Debtor's husband is completely disabled as a result of epileptic seizures. He cannot work and his only contribution to the household's monthly income is the social security benefit he receives and the reduced disability insurance payment. There is no

---

[10] Def.'s Ex. 1.

indication that this situation will improve. As a matter of fact, Debtor's testimony, which is uncontradicted, is that despite medications and one or more surgeries his situation has not only not improved, but has worsened.

Debtor's own ability to work is also somewhat circumscribed. Her disability places some limitation on her ability to work. She testified, for example, that it made it impossible for her to hold certain manufacturing jobs which she had obtained. The Court is not convinced that it places a significant limitation on her ability to work in the health care field, as she was employed full time as a nurse's aide after suffering the injury for which she received the disability rating. Her husband's condition also places some limits on her ability to work. The couple has three children who are still young and cannot be left alone with him for any significant period of time. In response to a question from Defendant's counsel, Debtor testified she could work an ordinary shift. However, she had previously testified that she was limited to a morning shift as she has to be available to care for the children when they return from school. The Court notes that her current part-time employment only involves work during the middle of the day from approximately 10:00 a.m. to 2:00 p.m. This may be partly a result of the fact that she works a lunch shift at a restaurant and partly by design to make it possible for her to be with the children when they return from school. Based on the evidence of Debtor's husband's disability in conjunction with her own disability, these circumstances strengthen the Court's decision that it would be an undue hardship for Debtor to repay her student loan.

For all of the above reasons, it is

ORDERED that the indebtedness owed by debtor Anita Easley to defendant Educational Credit Management Corporation be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated: December 17, 2004            /s/ Dennis R. Dow

                                    THE HONORABLE DENNIS R. DOW
                                    UNITED STATES BANKRUPTCY JUDGE

Copies to:

Janice A. Harder
N. Larry Bork